## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
SENTIENT JET, LLC,                      )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )        Civil Action No. 13-cv-10081
                                        )
APOLLO JETS, LLC and                    )
ALFRED PALAGONIA,                       )
                                        )
        Defendants.                     )
                                        )
_____)


## MEMORANDUM AND ORDER

**CASPER, J.**                                         **March 17, 2014**

### I.    Introduction

Plaintiff Sentient Jet, LLC ("Sentient") has sued Defendants Apollo Jets, LLC ("Apollo")
and Alfred Palagonia ("Palagonia") alleging intentional interference with contractual relations
(Count I) against both Defendants and misappropriation of confidential, proprietary and trade
secret information (Count II), intentional interference with prospective business relations (Count
III), conversion (Count IV) and unfair business practices in violation of Mass. Gen. L. c. 93A, §
11 (Count V) against Apollo.  D. 1. at 6–10.  The Defendants have jointly moved to dismiss the
complaint based on lack of personal jurisdiction over Palagonia, issue preclusion and failure to
state a claim.  D. 8.  For the reasons set forth below, the Court DENIES the motion to dismiss.

### II.   Factual Allegations

Unless otherwise noted, the facts recited here are as alleged in the complaint.

Sentient and Apollo are direct competitors in the business of brokering charter jet aircraft service.  D.1 ¶¶ 7, 15.   Kevin Brennan ("Brennan"), Darryn Mackenzie ("Mackenzie") and Marco Carnevale ("Carnevale") worked as salespeople for Sentient.  Id. ¶ 8.  Brennan and Mackenzie also worked as vice presidents of sales.  Id.  All three employees entered into employment agreements with Sentient ("the Employment Agreements"), which contained identical confidentiality, non-compete and non-solicitation provisions.  Id. ¶ 9.   The confidentiality clause provided:

> Duty of Confidentiality.   To assist in the performance of his or her duties for the Company, the Company has provided and will provide to Employee certain Confidential Information.  Employee agrees that during employment with the Company and for a period of five (5) years following the cessation of that employment for any reason, Employee shall not directly or indirectly divulge or make use of any Confidential Information or Trade Secrets without prior written consent of the Company.

Id. ¶ 12.  The non-competition clause provided:

> Non-Competition Covenant.   Employee agrees that during employment with the Company and for a period of one (1) year following the cessation of that employment for any reason . . . Employee will not compete with the Company by performing activities of the same type performed by Employee for the Company within the one (1) year period prior to Employee's termination for any business or entity which is engaged in a same or similar business as the Business of the Company at the time Employee's employment ceases or in any private jet fractional business or its card program.

Id. ¶ 10.  The non-solicitation clause provided:

> Non-Solicitation Covenant.  Employee will not directly or indirectly solicit, attempt to solicit, divert from the Company or transact business with any of the Company suppliers, vendors, or customers with whom Employee had Material Contact during the last twelve (12) months of Employee's employment with the Company if the purpose of the solicitation, attempted solicitation, diversion or transaction is to offer products which are the same as or similar to those offered or provided by Employee on behalf of the Company . . . .

Id. ¶ 11.  "Material Contact" is defined in the agreements as "personal contact or the supervision of the efforts of those who have direct personal contact with a vendor, supplier or customer."  D.

2

1-1 at 1; D. 1-2 at 1; D. 1-3 at 1.  All three agreements contained provisions requiring disputes arising from the agreements to be litigated in Massachusetts.[1]  D. 1-1at 4; D.1-2 at 4; D. 1-3 at 4.

In or before January 2012, Palagonia, Apollo's managing director, D. 1 at 1, began "courting" Mackenzie and Brennan during a conference in San Diego.  Id. ¶ 16.  Mackenzie and Brennan were attending the conference on Sentient's behalf.  Id.  Palagonia encouraged Mackenzie and Brennan to leave Sentient to work for Apollo.  Id.  "Thereafter, Mackenzie and Brennan had detailed communications with Apollo and Palagonia regarding their historical performance at Sentient and their projected performance at Apollo in the event that Mackenzie and Brennan were successful in pilfering Sentient's clients with whom they worked."  Id. ¶ 17.

Shortly thereafter, on or about February 3, 2012, Mackenzie, Brennan and Carnevale resigned from Sentient and immediately began working for Apollo.  Id. ¶ 14.  Apollo paid Mackenzie and Brennan signing bonuses in excess of $200,000 each.  Id. ¶ 18.  Palagonia was involved in the negotiations with Mackenzie and Brennan and approved the financial terms of their employment agreements, including the signing bonuses.  Id. ¶ 18.  At the time, these signing bonuses were the largest Apollo had ever paid to any employee.  Id.  Before leaving Sentient, however, Brennan, Mackenzie and Carnevale "downloaded and/or transferred" Sentient's confidential customer information to use in their future employment with Apollo, at Apollo's direction and with Apollo's assistance.  Id. ¶¶ 22–24.

Prior to hiring Mackenzie, Brennan and Carnevale, Apollo and Palagonia were aware of the Employment Agreements' restrictive covenants.  Id. ¶ 19.  Apollo agreed to "indemnify, hold harmless, and defend" Brennan and Mackenzie "against any claims asserted by any prior

---

[1]Carnevale's employment agreement required disputes arising from his employment agreement to be litigated in either Massachusetts or Delaware.  D. 1-3 at  4.

employer in relation to alleged prohibitions on competitive or solicitation activities, disclosure or use of allegedly confidential information, alleged unfair competition, or similar claims." Id. ¶ 20. Sentient alleges that Apollo has used the confidential customer information Brennan, Mackenzie and Carnevale took from Sentient to target and solicit Sentient's existing and prospective clients. Id. ¶ 41. Sentient alleges that Apollo continues to possess its confidential customer information and use it for its benefit. Id. ¶ 28.

On March 12, 2012, Sentient brought suit against Brennan, Mackenzie and Carnevale in Norfolk Superior Court, alleging breach of contract, misappropriation of confidential information, intentional interference with prospective business relations and breach of loyalty. Verified Complaint, D. 29-2 at 17–18. After trial, a jury returned a verdict in Sentient's favor on December 21, 2012, awarding Sentient $586,790 in damages. Declaration of James Livingstone, D. 29 at 1–2.

## III.    Procedural History

Sentient filed the instant complaint on January 14, 2013. D. 1. The Defendants have now moved to dismiss the complaint. D. 8. After a hearing on February 3, 2014, the Court took this matter under advisement. D. 43.

## IV.    Standard of Review

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Under the *prima facie* standard, to meet its burden of establishing that the Court has personal jurisdiction over a defendant pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citation and quotations omitted). The Court will "take specific facts

affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim," before "add[ing] to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Mass. Sch. of Law v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

### B.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court accepts "the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).  A plaintiff need not establish that it is likely to prevail, but its claim must be "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To determine plausibility, the Court must separate "the complaint's factual allegations (which must be accepted as true) . . . from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).  The Court must then "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.    Discussion

### A.    Palagonia is Subject to Personal Jurisdiction in Massachusetts

The Defendants argue that Sentient has failed to establish that the Court has personal jurisdiction over Palagonia, a corporate officer, independent of its jurisdiction over Apollo.  D. 28 at 8–9; D. 9 at 7–9.  The Court disagrees.

To establish personal jurisdiction over Palagonia, Sentient must demonstrate that Massachusetts's "long-arm statute grants jurisdiction and that the exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution." Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  Because Massachusetts's long-arm statute is co-extensive with the reach of the due process clause, "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972), the Court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

Sentient must show either specific or general personal jurisdiction.  Astro-Med, 591 F.3d at 9.  For specific jurisdiction, which is asserted here, Sentient must show that:  (1) its claims directly arose out of or are related to Palagonia's Massachusetts activities; (2) Palagonia purposely availed himself of the privilege of conducting activities in Massachusetts; and (3) the exercise of jurisdiction in Massachusetts is reasonable in light of the required factors.  Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007).

In regard to corporate officers, the "general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation." Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 906 (1st Cir. 1980) (citations omitted).  An officer's activities in the forum state, made on behalf of the company, may, however, form the basis of personal jurisdiction.  Yankee Grp., Inc. v. Yamashita, 678 F. Supp. 20, 22 (D. Mass. 1988); Interface Grp.-Massachusetts, LLC v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003).  That is, "[w]here a corporate officer has no contacts with the forum state, jurisdiction may not be asserted merely because of the position which the defendant holds with the corporation.  To the contrary, to establish jurisdiction over a nonresident corporate officer, there must be an

independent basis for requiring the officer to defend in a foreign court.  This requirement is satisfied when the officer himself transacts business within the foreign state, whether or not the business is personal or solely on behalf of the corporation."  Yankee Grp., 678 F. Supp. at 22 (internal citations omitted).

The Defendants cite M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 280 (D. Mass. 2008) for the proposition that an individual corporate defendant must also derive "personal benefit" from his Massachusetts contacts for jurisdiction to be proper.  D. 28 at 12.  M-R Logistics, in this regard, appears to represent the exception and not the rule.  Compare id. at 280 (concluding that there was no personal jurisdiction where there was no allegation or evidence that the managing member and authorized agent of the corporate defendant derived any personal benefit from the alleged breach of contract or acted outside the scope of their employment) with Yankee Group, 678 F. Supp. at 22 (analyzing issue of personal jurisdiction over corporate officer in terms of his contacts with the forum state while conducting business with plaintiff); see Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp. 2d 255, 262 (D. Mass. 2012) (assessing personal jurisdiction over corporate board member in terms of his "personal contacts with Massachusetts" which included those contacts that were made on behalf of the corporation); Trans Nat'l Travel, Inc. v. Sun Pac. Int'l Inc., 10 F. Supp. 2d 79, 83 (D. Mass. 1998) (same).[2]

---

[2] LaVallee v. Parrot-Ice Drink Products of Am., Inc., 193 F. Supp. 2d 296 (D. Mass. 2002), cited by Defendants at oral argument, does not provide any more persuasive support for their argument. That case involved a "junior business associate," id. at 300–02, which appeared to figure into the court's analysis regarding the exercise of personal jurisdiction.  Id. at 302 (noting that "[a]lthough this may [be] a close call, the Court concludes that [the junior business associate] did not act in the forum to serve his personal interests, but rather acted solely as an agent of [the corporate defendant]."  Moreover, as Sentient noted at oral argument, the court in LaVallee did not, in a more recent 2013 opinion, impose any personal benefit requirement.  See

As the Court discusses below, Sentient has properly alleged that Palagonia's own conduct provides a sufficient basis for specific jurisdiction.[3]

### 1.    Relatedness

Sentient must show that its claims "directly arise out of, or relate to, the defendant's forum-state activities." Astro-Med, 591 F.3d at 9 (citations omitted). This standard is "flexible" and "relaxed." Id. (citations omitted). While the Defendants assert that the complaint "never specifically alleges that Palagonia had any direct contact with Massachusetts," D. 9 at 14, n.3, the First Circuit has held that "a defendant need not be physically present in the forum state to cause injury (and thus activity for jurisdictional purposes) in the forum state." Astro-Med., 591 F.3d at 10 (citations and quotations omitted).

Here, the only claim brought against Palagonia is intentional interference with contractual relations for Palagonia's role in the former employees' breaches the Agreements. See D. 1; D. 17 at 7. The elements of such claim are that Sentient had an advantageous relationship with third parties, their former employees (here, in the form of the Employment Agreements); (2) that Palagonia knowingly induced them to break their contracts; (3) by improper motive or means; and (4) as a result of his conduct, Sentient suffered harm. Blackstone v. Cashman, 448 Mass. 255, 260 (2007). Here, this claim arises out of Palagonia's own activities in Massachusetts, the

---

Galletly v. Coventry Healthcare, Inc., 956 F. Supp. 2d 310, 313 (D. Mass. 2013) (exercising personal jurisdiction over the chief operating officer where he "has had enough contacts with the forum state that are sufficiently related to the cause of action for this Court to exercise personal jurisdiction" and noting that our courts in this district "have exercised specific jurisdiction over individual corporate officers which such officers mailed solicitation letters, placed numerous telephone calls and personally visited the forum on behalf of their employer").

[3]While the Defendants allege that Sentient mischaracterizes certain of the averments in its affidavits, D. 28 at 14, the Court notes that the standard applicable here allows the Court to consider the "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and constru[ing] them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law, 142 F.3d at 34, including those allegations in the complaint.

forum state.  First, the Palagonia was aware of the Employment Agreements between Sentient, based in Massachusetts and its former employees and that they included the restrictive covenants.  D. 1 ¶ 19.  Second, although Palagonia's initial effort to recruit Mackenzie and Brennan occurred at a conference in San Diego, D. 1 ¶¶ 5, 16, Sentient has satisfied relatedness by sufficiently alleging that Palagonia's actions caused Sentient injury in Massachusetts. Sentient has alleged that Palagonia approached both Mackenzie and Brennan, who were employees working in Massachusetts, while they were representing Sentient, a company operating in Massachusetts.  Id.; D. 29-2 at 2, 5-6.  Palagonia had "detailed communications" with Mackenzie and Brennan "regarding their historical performance at Sentient and their projected performance at Apollo."  D. 1 ¶ 17.  Thereafter, Palagonia successfully encouraged these employees to leave Sentient to work for the Massachusetts branch office Apollo would be opening and to bring Sentient customers with them.  Id. ¶¶ 5, 16, 18.  To entice the employees to join Apollo, Palagonia "signed off" on the financial terms of Mackenzie and Brennan's employment agreements with Apollo – including signing bonuses of more than $200,000 each. Id. ¶ 18.  Sentient would feel any harm that arose from the Defendants' conduct in Massachusetts, where it runs its business and where it now would have a direct competitor staffed by its former employees.  See Astro-Med, 591 F.3d at 9–10 (personal jurisdiction in Rhode Island proper in a tortious interference case against a competitor, even though the competing California corporation had all direct dealings with employee, a Florida resident, either in Florida or in California, as a cause of "actual  injury" was in Rhode Island and "clearly related to [the plaintiff's] claim"); Berman Devalerio Pease Tabacco Burt & Pucillo v. Rubinstein, No. 07-cv-12127-PBS, 2008 WL 7593022, at *6 (D. Mass. Feb. 28, 2008) (finding relatedness in a breach of contract case where "contract negotiated at least partly in Massachusetts, the terms of

which subjected [the Defendants] to ongoing connection to Massachusetts in performance, and under which Defendants frequently communicated with Massachusetts").

### 2. *Purposeful Availment*

Sentient is also required to show that Palagonia purposeful availed himself of the privilege of doing business in Massachusetts, "thereby invoking the benefits and protections of [the] state's laws and making [his] involuntary presence before the state's courts foreseeable." Astro-Med, 591 F.3d at 10. Palagonia actively recruited and hired Massachusetts employees, who were still working at the time in Massachusetts for a Massachusetts company, with the purpose of staffing Apollo's new Massachusetts office, aware that the employees were subject to the Employment Agreements, which included Massachusetts forum selection clauses. D. 1 ¶¶ 5, 16, 19; D. 1-1; D.1-2; D. 1-3. That is, given the locus of new hires' work for Sentient in Massachusetts and Palagonia's awareness of the Employment Agreements while he was recruiting the three to work for Apollo--agreements that included not just restrictive covenants, but a forum selection clause--there was some likelihood that Palagonia could get hauled into court in Massachusetts. Moreover, Palagonia testified at a deposition that part of the reason why Apollo wanted to hire at least Mackenzie was because "it's always easier if you have a person who lives [in Boston] that can cultivate business." October 4, 2012 Deposition of Alfred Palagonia (D. 18-7 at 19). Given these facts, the Court finds Palagonia's conduct sufficient to satisfy purposeful availment, as it was reasonably foreseeable that he could be hauled into a Massachusetts court to answer for his actions. See Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 235 (D. Mass. 2011) ("[The new employer] knew full well that the Agreement included [the employee's] consent to subject himself to jurisdiction in Massachusetts, and that any benefits it received as a result of using [the former employer's] confidential information

could involve [the new employer] in litigation in Massachusetts. That is sufficient to establish purposeful availment"); Medicus Radiology, LLC v. Nortek Medical Staffing, Inc., 2011 WL 9373, at *5 (D.N.H. January 3, 2011) (purposeful availment satisfied where, even if defendant did not know about the employee's non-compete prior to initial hiring, plaintiff notified defendant that hiring employee violated plaintiff's contract with employee).

       *3.*     *Reasonableness*

      The Court considers several factors in determining whether it is reasonable to exercise jurisdiction over a defendant:  "the defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies."  Astro-Med, 591 F.3d at 10 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  The Court finds that these Gestalt factors weigh in favor exercising jurisdiction over Palagonia in Massachusetts.

      First, the Court finds that traveling from New York to Massachusetts is not a "special or unusual" burden on Palagonia sufficient to deny Sentient's choice of forum.  D. 17 at 15.  See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994) (noting that "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden. . . . In the modern era, the need to travel between New York and Puerto Rico creates no especially ponderous burden for business travelers").  While Sentient does not indicate who the non-party witnesses will be, the Defendants do not assert that this forum would be inconvenient for any non-party witnesses.  See D. 9; D. 28.  The Court also finds

particularly compelling that Massachusetts has a strong interest in adjudicating this dispute because one of its corporate residents suffered from Palagonia's allegedly tortious conduct. See Optos, 777 F. Supp. 2d at 235 (quoting Abiomed, Inc. v. Turnbull, 379 F. Supp. 2d 90, 96 (D. Mass. 2005). The Defendants have not indicated any reason why another forum would have a greater interest in adjudicating a dispute in which a Massachusetts resident was the victim of a tort felt in Massachusetts; therefore, the Court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994).

For these reasons, the Court DENIES the Defendants' motion to dismiss Sentient's claim against Palagonia for lack of personal jurisdiction.

### B.  Sentient's Claims of Intentional Interference with Prospective Business Relations and Misappropriation are Not Precluded

The Defendants argue that the judgment from the prior state court action precludes Sentient from bringing its intentional interference with prospective business relations and misappropriation claims in this case against Apollo.[4] D. 9 at 19. The Defendants contend that Sentient has already "obtained relief for identical claims." Id. The Court finds, however, that the Defendants have not met their burden of "conclusively establishing" this affirmative defense. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

Federal courts are to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980); see also Kremer v. Chemical Const. Corp., 456 U.S. 461, 481–82 (1982); Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28–29 (1st Cir. 1998). Accordingly, the Court applies

---

[4] While the Defendants filed a joint motion to dismiss, Sentient has brought these claims against Apollo only. See D. 1.

Massachusetts law.    Despite Sentient's argument to the contrary, D. 17 at 18, the Court may consider the Defendants' affirmative estoppel defense on a motion to dismiss, see In re Colonial Mortgage Bankers Corp., 324 F.3d at 16, if:  (1) "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice," and (2) "the facts so gleaned [] conclusively establish the affirmative defense." Id.

The overarching guiding principle for Massachusetts courts' evaluation of issue preclusion is whether the party against whom the defense is asserted had the "full and fair opportunity to litigate the issue in the first action."    Martin v. Ring, 401 Mass. 59, 61 (1987) (citation omitted).  Issue preclusion requires the Court to answer four questions: "(1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?"  Alba v. Raytheon Co., 441 Mass. 836, 842 (2004) (citation omitted).    As the party asserting preclusion, the Defendants bear the burden of establishing these elements.  Alicea v. Com., 466 Mass. 228, 236 (2013).

Before the Court addresses this specific analysis, the Court pauses to note that the Defendants' invocation of issue preclusion or collateral estoppel is imperfect, at best, here.  Issue preclusion is typically invoked to protect the prevailing party from having to re-litigate the same issues if the losing party had a full and fair opportunity to litigate the same issues in the prior litigation.    Here, the Defendants seek to invoke the doctrine offensively to preclude claims

brought by the same plaintiff against related, but different, defendants.  That is, it is not seeking to protect itself against re-litigation of liability and/or damages on the same claims that Sentient now pursues against it (and Sentient does not seeks to invoke the doctrine offensively to rely upon any favorable findings in the other forum).  As analyzed below under the collateral issue doctrine, the Court concludes that the doctrine does not apply, but, as an initial matter, it is imperfectly invoked here.

Assuming *arguendo* the doctrine is properly invoked here, there is no real dispute that the state court matter against the individual employees was resolved to final judgment and Apollo was in privity with them.   Assuming those elements are satisfied, the real  issues here are the last two considerations:   whether the issues litigated and adjudged in the state court proceeding were identical to the ones here and whether those issues were essential to the judgment entered in the prior adjudication.  The Court concludes that the issues in this case are sufficiently distinct from those in the state court case such that the Defendants have not conclusively established that Sentient should be precluded from bringing their claims against Apollo.

In the state court proceedings, Sentient sued Mackenzie, Brennan and Carnevale for intentional interference with prospective business relations and misappropriation of confidential information.   D. 29-2 at 17–18.   Sentient alleged that the employees stole confidential, proprietary customer information when they left employment at Sentient, id. at 9–13, and, once they began working at Apollo, used such information to target Sentient's existing and potential clients.  Id. at 13–16.  Sentient alleged that it sustained damages when it lost customers to Apollo because of the actions of these (current) Apollo employees' actions.  Id. at 14.  The jury found in Sentient's favor and awarded damages for losses sustained as a result of those actions.  D. 29-3.

In the instant complaint, Sentient filed the same two claims of intentional interference with prospective business relations and misappropriation of confidential information against a different defendant, Apollo.  D. 1 ¶¶ 35–49.  Sentient argues that Apollo not only encouraged Mackenzie, Brennan and Carnevale to take Sentient's confidential customer information, id. ¶ 22, but also assisted them in doing such.  Id. ¶ 23.  Sentient also alleges that under Apollo's direction and guidance, the three employees siphoned Sentient's customer good will for Apollo's benefit and to Sentient's detriment.  Id. ¶ 25.

The Defendants are correct in asserting that both sets of claims and allegations of wrongdoing stem from largely the same underlying facts – Mackenzie, Brennan and Carnevale's misappropriation of confidential information.  While these facts are essential to this litigation, so are the allegations that Apollo assisted and guided the employees and improperly benefited, which were not necessarily essential to the state court case against the individual employees.  The Court cannot conclude that the issues raised here against Apollo (or the single claim against Palagonia) are identical to the ones adjudicated in the state court case.  Whether Apollo (and/or Palagonia) engaged in misconduct and what effect, if any, such alleged misconduct had on Sentient are distinct issues from Mackenzie, Brennan and Carnevale's actions and the effect they had on Sentient.

Further, to the extent the Defendants argue that any damages from the state court action and the instant action overlap, D. 28 at 11, the Court finds that some overlapping damages would not preclude Sentient from bringing forth its claims.  When both individual and corporate defendants have participated in the misuse of trade secret information, Massachusetts courts have permitted the plaintiff to recover damages from both sources.  Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 159 (1979).  "The measure of damages in cases involving business

torts[,] such as the misappropriation of trade secrets[,] entitles a plaintiff to recover full compensation for his lost profits and requires a defendant to surrender the profits which he realized from his tortious conduct." Id. at 169. Therefore, Sentient may be able to recover any profits derived from Apollo's corporate misconduct, which could not have been accounted for in the state action against the individual employees.

For these reasons, the Court finds that the Sentient is not precluded from bringing its misappropriation and tortious interference with prospective business relations claims against Apollo.

### C.    Sentient Alleges a Sufficient Factual Basis to Support Its Claims

#### 1.    Intentional Interference with Contract

For intentional interference with contractual relations claim (Count I), Sentient must prove:  (1) an advantageous relationship with a third party; (2) that the Defendants knowingly induced the third party to break the contract; (3) improper motive or means; and (4) harm caused by the Defendants' actions. Cashman, 448 Mass. at 260.

The Defendants have argued that Sentient has insufficiently pleaded the third element, improper motive or means. D. 9 at 15. The Defendants contend that to show an improper means, "Sentient must allege that Apollo and Palagonia violated a statute or committed a common law tort in inducing the Former Sentient Employees to leave Sentient." D. 28 at 5. They also argue that to show improper motive, "Sentient must allege that Apollo and Palagonia's alleged interference was 'wrongful by some measure beyond the fact of interference itself.'" Id.

The Court finds that Sentient has properly pleaded improper motive or means. It is correct that to allege the "improper in motive or means" element of tortious interference, a plaintiff must plead that the new employer did more than simply induce the employee to breach

his non-compete with his former employer.  See TalentBurst, Inc. v. Collabera, Inc., 567 F.
Supp. 2d 261, 269 (D. Mass. 2008) (noting that interfering with a restrictive covenant by
"offering of a job to a competitor's at-will employee, including one that provides better pay and
benefits, does not as matter of law constitute improper means").  Likewise, a goal of mere
financial benefit is not an improper motive if a defendant does not have the intention of hurting
the plaintiff.  United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990) (citing the lack
of "evidence that [defendant] used threats, misrepresented any facts, defamed anyone, or used
any other improper means in relation to either the existing contract or the prospective one").
Here, however, reading the complaint as a whole, Sentient has alleged not only that the
Defendants recruited and hired Sentient's employees, but also that they did so with the intention
of misappropriating Sentient's confidential information and opening a Massachusetts branch
office.  D. 1 ¶¶ 5, 16, 19, 23.  Apollo agreed to "indemnify, hold harmless, and defend" Brennan
and Mackenzie "against any claims asserted by any prior employer in relation to alleged
prohibitions on competitive or solicitation activities, disclosure or use of allegedly confidential
information, alleged unfair competition, or similar claims."  Id. ¶ 20.  These allegations go
beyond merely hiring employees subject to restrictive covenants and, rather, support a reasonable
inference that the Defendants employed an improper motive or means in interfering with the
Agreements by encouraging the employees to breach the Agreements, directing them to
misappropriate confidential information to which neither they nor the Defendants were entitled,
offering them protection against litigation that might ensue as a result and then continuing to use
to misappropriated confidential information to their benefit.  D. 1 ¶¶ 5, 16, 19, 23, 28.  See W.B.
Mason Co., Inc. v. Staples, Inc., No. 00-5042 BLS, 2001 WL 227855, at *8 (Mass. Super. Jan.
18, 2001) (finding that intentional interference claim was likely to succeed, in part on the basis

that the defendants, who were aware that the plaintiffs' employees were subject to restrictive covenants, offered them employment and then advised them to immediately start calling on their former clients); TalentBurst, Inc., 567 F. Supp. 2d at 269 (finding that the "specific improper goal . . . [of] obtain[ing] access to [plaintiff's] confidential information" would constitute improper motive).[5]

### 2.    *Intentional Interference with Prospective Business Relations*

For tortious interference with advantageous business relations, Sentient must prove: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) [Sentient's] loss of advantage directly resulting from the defendant's conduct." Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F. 2d 33, 36 (1st Cir. 1992) (citing Geltman, 406 Mass. at 814).    The Defendants cite Singh v. Blue Cross/Blue Shield of Massachusetts, Inc., 308 F.3d 25, 47–48 (1st Cir. 2002) for their argument that Sentient must allege interference with a specific business relationship to state a claim for intentional interference with prospective business relations.   See D. 9 at 18.   The Court need not reach the issue of whether Sentient is required to allege the existence of a specific business relationship, however, because Sentient seeks to amend the complaint to add allegations that Apollo interfered with its relationship with American Express.   D. 17 at 28, n.13.   Since adding these facts would not be futile, Fed. R. Civ. P. 15(a)(2), the Court ALLOWS Sentient's motion to amend the

---

[5]The Defendants also argue for a heightened pleading requirement of actual malice for the tortious interference claim against Palagonia, a corporate officer.  D. 9 at 10–11.  The actual malice standard applies, however, only to "corporate officials acting with regard to contractual or prospective contractual relations between the corporation and its [own] employees," Blackstone, 448 Mass. at 262 (discussing and distinguishing Geltman, 406 Mass. at 814), which is not the case here.  Here, Palagonia is accused of interfering with the contract between Sentient, a third party, and its employees.

complaint to add factual allegations concerning Apollo's interference with its relationship with American Express.

### 3.    *Conversion*

To establish conversion, Sentient must show that Apollo exercised dominion over Sentient's personal property, without right, depriving Sentient of its use and enjoyment.  In re Hilson, 448 Mass. 603, 611 (2007).  The Defendants assert that because Massachusetts courts recognize only conversion of tangible property, Sentient's conversion claim must be dismissed. D. 9 at 22.  Even assuming this assertion is true,[6] Sentient's conversion claim survives.  Courts interpreting Massachusetts law have held that intangible property that is in some way "merged with or [] inhere[d] in" a physical object can be the subject of a conversion claim.  Discover Realty Corp. v. David, No. 1520, 2003 WL 22387138, at *3 (Mass. App. Div. Oct. 14, 2003); John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F. Supp. 2d 1, 28–29 (D. Mass. 2002) (finding that architectural drawings could be the subject of a conversion claim, even though the physical drawings were not the "centerpiece" of the complaint); Export Lobster Co. Inc. v. Bay State Lobster Co., Inc., No. CA926348E, 1994 WL 902930, at *6 n.16 (Mass. Super. Oct. 31, 1994) (noting that possession of tangible customer lists could be sufficient for conversion claim).  Here, the Plaintiff alleges that "Mackenzie, Brennan and Carnevale downloaded and/or transmitted Sentient's confidential information to Apollo's computer system."  D. 1 ¶ 23.  Although Sentient does not specifically allege that the confidential customer

---

[6]The Court recognizes that the case law is unsettled as to whether Massachusetts limits conversion claims to tangible property.  See In re TJX Companies Retail Sec. Breach Litigation, 564 F.3d 489, 499 (1st Cir. 2009) (noting that "[w]hether or not Massachusetts limits conversion claims to tangible property is debatable"); Nekoroski v. Mathai, No. 11-4315-BLS1, 2012 WL 5309524, at *9 (Mass. Super. Sept. 28, 2012) (noting that "Massachusetts appellate courts do not appear to have faced the issue head-on in a civil case").

information was downloaded onto a flash drive or some sort of physical disk, such an inference is a reasonable one here.  As Sentient notes, the manner in which Apollo may have transmitted the customer information is an issue to be resolved through discovery.  For these reasons, the Court denies the Defendants' motion to dismiss the conversion claim.

<em>4.    Mass. Gen. L. c. 93A</em>

Mass. Gen. L. c. 93A provides a cause of action for "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice."  Mass. Gen. L. c. 93A, § 11.  "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Id. The Court finds that Sentient has sufficiently pleaded a c. 93A claim.

The Defendants argue that Sentient has not alleged that Apollo's conduct occurred "primarily and substantially within" Massachusetts, as c. 93A requires.  D. 9 at 23.  However, whether the actions underlying a c. 93A claim occurred primarily and substantially in Massachusetts is "fact intensive and unique to each case."  Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 472–73 (2003).  "Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  Id. at 473. Accordingly, "a section eleven cause of action, attacked via a motion to dismiss, should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is

20

located, and claims an injury, in Massachusetts." Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (citing Amcel Corp. v. Int'l Executive Sales, Inc., 170 F.3d 32, 36 (1st Cir. 1999) (noting that the plaintiff's location in Massachusetts and its claim of injury in Massachusetts raises a reasonable chance that the plaintiff would prevail on the "primarily and substantially" issue); see also Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 118 (D. Mass. 2003) ("[T]he decision as to whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth must be made on the basis of factual findings. Since a Court does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue") (citation and quotations omitted). Here, Sentient has pleaded that its principal place of business is Braintree, Massachusetts. D. 1 ¶ 1. Sentient alleges that Apollo hired three of Sentient's former Massachusetts employees and subsequently opening a competing Massachusetts office "to divert Sentient's clients, including its Massachusetts clients," id., by directing three of Sentient's former employees to take confidential customer information from Sentient before they resigned. Id. ¶¶ 23, 41. Sentient has met its burden of alleging that it is located in Massachusetts and that its injury occurred primarily and substantially in Massachusetts.

Finally, the Defendants argue that c. 93A does not apply to "disputes arising out of employment relationships or for the enforcement of non-competition agreements." D. 9 at 25. As discussed above, however, the Court finds that the facts underlying the conversion claim form a sufficient basis for a c. 93A claim, independent of whether the former employees violated their restrictive covenants. See Specialized Technology Resources, Inc. v. JPS Elastomerics Corp., 80 Mass. App. Ct. 841, 847 n.10 (2011) (finding that even though an employee "was bound by a

confidentiality agreement as part of his employment contract, his [alleged misconduct] was actionable independent of his contractual obligations and accordingly may support a claim under c. 93A"). Therefore, the Court DENIES the Defendants' motion to dismiss Sentient's c. 93A claim.

## VI.     Conclusion

For the above reasons, the Court DENIES the motion to dismiss, D. 8, and ALLOWS Sentient to amend its complaint, consistent with this Order, by no later than March 27, 2014.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge